[No. 18181. Department One. February 28, 1924.]

FIRST NATIONAL BANK OF HARRINGTON, *Respondent*, v. W. J. WOMACH, *Appellant*.[1]

CHATTEL MORTGAGES (3, 37)—EXECUTION (61)—TITLE AND RIGHTS OF PURCHASER—LIEN OF CHATTEL MORTGAGE—PRIORITY. A crop mortgage upon a crop to be grown in the succeeding year has priority over the rights of a purchaser at an execution sale of the leasehold and crop, in view of Rem. Comp. Stat., § 3779, authorizing mortgages "upon growing crops and upon crops before the seed thereof shall have been sown or planted."

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered June 18, 1923, in favor of the plaintiff, in an action to foreclose a chattel mortgage, tried to the court. Affirmed.

[1]Reported in 223 Pac. 586.

*G. E. Lovell,* for appellant.

*H. W. Reading* and *Freece & Pettijohn,* for respondent.

PARKER, J.—The plaintiff bank seeks foreclosure of a crop chattel mortgage. The defendant, Womach, resists such foreclosure, claiming ownership of the crop freed from the claimed mortgage lien of the bank, rested upon his purchase of the interest of the mortgagor in the land after the execution of the mortgage, at a sheriff's sale under an execution issued upon a personal money judgment rendered against the mortgagor. A trial in the superior court for Lincoln county upon the merits resulted in a decree of foreclosure against Womach as well as against the mortgagor. From this disposition of the cause in the superior court, Womach has appealed to this court.

On September 7, 1921, James Shields duly executed and delivered to the bank a crop chattel mortgage upon "crops now growing and to be grown and harvested in the season of 1922" upon certain described land in Lincoln county to secure an indebtedness then owing by him to the bank; which land was then held by him under a farm lease which by its terms was not to expire until October 1, 1924. The mortgage was on the following day duly placed of record in the office of the county auditor of Lincoln county.

During the fall of 1921, we shall assume after the execution of the mortgage, Shields planted winter wheat upon the land with a view of producing a crop during the season of 1922. Thereafter on November 26, 1921, a money judgment was rendered in the superior court for Lincoln county against Shields and in favor of appellant Womach; which judgment, the record before us warrants the assumption, indeed it seems to be conceded, was in no sense rendered as a

specific lien upon the interest of Shields in the land or crop. Execution was issued upon that judgment, and in pursuance thereof a sale of the leasehold interest of Shields in the land was made by the sheriff of Lincoln county on January 14, 1922, at which Womach became the purchaser of such leasehold interest of Shields. Thereafter, upon the maturing of the crop in the fall of 1922, the bank commenced this action, seeking foreclosure of the mortgage against both Shields and Womach, resulting in the judgment from which Womach here appeals.

Counsel for Womach contends that his interest in the crop as well as in the land, by virtue of his purchase at the execution sale, became in law superior to and freed from the mortgage lien claim of the bank. To support this contention reliance is placed upon our decisions in *Woody v. Wagner,* 89 Wash. 429, 154 Pac. 819, and *Union Farm Land Co. v. Isaacs,* 106 Wash. 168, 179 Pac. 84. We think those decisions are not controlling in our present inquiry. In both of those cases the mortgagors' interests in the crops in question were terminated after the execution of the mortgages, in pursuance of express provisions in the contracts under which the mortgagors were in possession of and farming the land. Plainly, such is not the cause or authority for the termination of Shields' leasehold interest in this land. His leasehold interest was not terminated by any voluntary act upon his part in pursuance of the terms of his lease contract; nor was it terminated by any claim of right on the part of Womach which he had the right to exercise in pursuance of the terms of the lease contract. Womach simply bought Shields' interest in the land and crop at the execution sale under the personal money judgment rendered against Shields. Whatever lien that judgment evidenced or brought into being became such after the bank's crop

mortgage lien attached to the crop, and wholly independent of any of the provisions of the lease contract under which Shields held the land and crop. Our chattel mortgage statute in terms provides for and authorizes the giving of mortgages upon "growing crops and crops before the seed thereof shall have been sown or planted;" and further provides for the filing for record in the office of the county auditor of such mortgages, and that "every mortgage filed and indexed in pursuance of this act shall be held and considered to be full and sufficient notice to all the world, of the existence and conditions thereof." Sections 3779, 3782, Rem. Comp. Stat. [P. C. §§ 9759, 9761.] Plainly, when Womach purchased at the execution sale Shields' leasehold interest, including his interest in the growing crop, such purchase was subject to the prior duly executed and recorded mortgage lien claim of the bank.

Some contention is made in behalf of Womach rested upon certain decisions of the courts which hold in substance that a crop mortgage, in so far as it purports to give a lien upon crops to be grown in the future, does not attach until the seed for the crop is actually placed in the ground or until there is an actual severance of the crop from the ground. These decisions are of no avail to Womach, in view of our statute which manifestly contemplates that, at all events, a mortgage upon a crop does actually attach and become a lien upon the crop as soon as the crop is planted.

The judgment of foreclosure is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.