[Civil No. 2246. Filed March 4, 1925.]

[233 Pac. 897.]

# SOUTHERN SURETY COMPANY, a Corporation, Appellant, v. COUNTY OF COCHISE, Appellee.

1. DEPOSITARIES—SURETY ON COUNTY DEPOSITARY'S BOND LIABLE FOR FULL LOSS, NOT EXCEEDING PENALTY, NOTWITHSTANDING PROVISION FOR PRORATING LOSS—"STATUTORY BOND."—Under Civil Code of 1913, paragraphs 4642-4644, surety on county depositary's bond is liable to county for full amount of loss, not exceeding penalty of bond, and provision for prorating loss when there are other bonds is ineffective; it being purely "statutory bond," which "is one required by some statutes," provisions of which are part of it.

2. DEPOSITARIES—LIABILITY OF SURETY ON COUNTY DEPOSITARY'S BOND NOT AFFECTED BY EXISTENCE OF ANOTHER BOND INSURING SAME FUNDS.—In view of Civil Code of 1913, paragraphs 205, 208, made applicable to county depositary's bonds by paragraph 4644, surety's obligation is not affected by existence of another bond insuring same funds at time of depositary's failure, though latter's right to furnish another bond affected risk and amount of premium charged.

See (1) 9 **C. J.**, p. 24; 18 **C. J.**, p. 589 (1926 Anno.). (2) 18 **C. J.**, p. 589 (1926 Anno.).

APPEAL from a judgment of the Superior Court of the County of Cochise. A. M. Sames, Judge. Affirmed.

Messrs. Wallace & Cameron, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. John F. Ross, County Attorney, for Appellee.

McALISTER, C. J.—This is an action by Cochise county against the Southern Surety Company to collect the amount alleged to be due on a bond given by

---

1. Effect of insertion of unauthorized provision in a bond required by statute, see note in **L. R. A.** 1917B, 990.

the Central Bank of Willcox as a depository of the public funds of that county. From a judgment for the plaintiff in the amount prayed for and an order denying its motion for a new trial, the Southern Surety Company appeals.

The Central Bank of Willcox, desiring to become a depository of the funds of Cochise county, filed its bond with the board of supervisors of that county in the sum of $25,000 with the Southern Surety Company as surety, and on April 5, 1920, this bond was approved by the board, whereupon the bank became entitled to and did receive deposits from the county. This bank failed and was taken over by the state banking department on January 8, 1921, at which time the county had on deposit with it $24,394.28; but in the settlement of its affairs the receiver by payments to the county reduced this amount to $22,973.52.

There was another bond guaranteeing the payment of these funds in full force and effect at the time of the failure. It was in the sum of $10,000, and had been furnished by the Central Finance Corporation. The county brought suit on it, recovered judgment for $10,000, and had execution issued thereon; but the latter was returned unsatisfied; the Central Finance Corporation being insolvent.

The bond furnished by appellant, the Southern Surety Company, contains this clause:

"That in the event of default on the part of the principal, the surety shall be liable hereunder for only such proportion of the total loss sustained by the obligee as the penalty of this bond shall bear to the total penalty of all bonds and securities furnished to the obligee, and in no event shall the surety be liable hereunder in the excess of the penalty of this bond."

Appellant contended below, and does here, that by virtue of this clause it became liable for only five-

sevenths of the loss, and in fulfillment of this obligation it deposited on August 6, 1921, with the clerk of the superior court of Cochise county $17,319.45 as a tender of this amount. The county, upon the other hand, takes the position that the bond is a statutory bond, that because of this fact the provisions of the statute relating thereto became a part of it, and that the Southern Surety Company, by virtue thereof, became liable for the full amount of the loss; it being less than the face of the bond. The only question presented, therefore, is whether the clause permitting the surety to prorate the loss is effective as a part of the bond.

Paragraph 4642, Civil Code of 1913, provides that the county treasurer, with the consent of the board of supervisors, may appoint and designate any bank or banks within the state doing business under the laws thereof, or under the laws of the United States, and having a paid-up capital of not less than $10,000, to be a depository of county funds upon compliance with title 44 relating to public moneys. To entitle it to receive such funds as deposits, the first requirement is that the bank furnish the bond provided for in the succeeding paragraph, 4643, which is in the following language:

"4643. Any such bank desiring to avail itself of the benefits of the provisions of the next preceding section, shall make, execute and deliver a bond, with good and sufficient sureties, to . . . the county . . . in a penalty which shall not be less than the amount which the said bank may be entitled to receive on deposit under the provisions of the next preceding section, conditioned that such bank will promptly pay out to the parties entitled thereto, all public moneys in its hands, upon lawful demand therefor, and will, whenever thereunto required by law, pay over to . . . the county treasurer such moneys, with interest as hereinafter provided. . . . "

The qualifications of the sureties on such bonds are found in the succeeding paragraph, 4644, which is in these words:

"4644. The sureties upon such bond shall have all the qualifications required by law in case of official bonds, and shall comply with and be subject to all the terms and conditions of the laws of this state governing official bonds:.

"Provided, further, that in case a surety company be given as surety upon any such bond, as hereinafter provided, no justification by affidavit or otherwise shall be required."

The only authority for a bond securing county deposits as well as for the terms and conditions thereof is found in the foregoing provisions. A bond of this kind therefore is purely a statutory bond, which, under the authorities, "is one required by some statutes." *Lowe et al.* v. *City of Guthrie,* 4 Okl. 287, 44 Pac. 198. The conditions and terms of the one here involved are substantially those required by these provisions; the only exception being the clause permitting the surety to prorate the loss when there is more than one bond. If appellant has the right, as it contends, to limit its liability in such a way that it will be liable for only such portion of the total loss as the amount of the bond bears thereto, this exception is binding upon the parties; but, if only those provisions prescribed by the statute may become terms of the bond, it is mere surplusage and cannot be enforced. There is no statutory provision either specifically prohibiting or permitting such a clause, but under the authorities only those terms and conditions which the statute prescribes for such a bond may rightfully be placed in it, hence neither party to it is empowered to insert anything else. It is likewise true that the terms and conditions required by the statute become a part of the bond whether specifically mentioned

therein or not, for the law presumes that the parties contracting have knowledge of the fact that these requirements will be as binding upon them as the written provisions of the bond itself. The purpose of the bond being purely a public one and its terms defined by the law authorizing it, it is clear that the insertion of conditions altering the statutory provisions are without effect. The insurer under such circumstances is presumed to know the limitations of the public's agents. As the court very properly said in *Western Casualty & Guaranty Ins. Co.* v. *Board of Commissioners,* 60 Okl. 140, L. R. A. 1917B, 977, 159 Pac. 655:

"We believe that a bonding company, giving a bond under the provisions of a law and for a public purpose, is bound to know the law and to know the limitations fixed by the law upon the authority of the agents for the public, with whom it contracts. Here the statute fixes the conditions of the depository bond. Section 1540, *supra.* This law, with all its terms, no more and no less, becomes a part of the bonding contract. The board has no authority to waive any part of the statute or add anything to it. The bond in controversy, as executed, contains all the conditions required by the statute, with the addition of a condition requiring notice, which tends to modify the statute and to limit the liability. This additional condition, we think, may not be imposed."

On this same question the appellate court of Indiana in *Southern Surety Co. et al.* v. *Kinney,* 74 Ind. App. 205, 127 N. E. 575, said:

"These provisions of the statute, although not written into the bond in suit, are a part of it, and enter into a determination of the rights and liabilities of the obligors thereon. When appellants executed such bond they were bound to know the conditions imposed by the statute, and were powerless to change the obligations thereby assumed by inserting therein any restrictive provisions."

Among the provisions of the statute relating to official bonds which paragraph 4644, *supra,* makes applicable to bonds furnished by banks as depositories of public funds are the following:

"205. In no case is the original bond discharged or affected when an additional bond has been given, but the same remains of like force and obligation as if such additional bond had not been given. . . .

"208. Whenever the sureties on either bond have been compelled to pay any sum of money on account of the principal obligor therein, they are entitled to recover, in any court of competent jurisdiction, of the sureties on the remaining bond, a distributive part of the sum thus paid, in the proportion which the penalties of such bonds bear one to the other, and to the sums thus paid, respectively."

It is very plain from these provisions that appellant's obligation was in no way affected by the fact that at the time the bank failed there was in force another bond insuring these same funds. It is true the surety had the right to limit its liability, but the only way it could do this was by naming that limit as the penalty of the bond. When it accepted a premium on $25,000 and agreed to be responsible to that extent in case of a loss in that amount or greater, it thereby limited its liability; but, since the giving of another bond could in no way discharge its obligation, it was immaterial that its risk may have been affected by the depository's right to furnish another bond, insuring the same moneys, and that this right may have become a factor in determining the amount of premium to be charged. If it reduced its premium because its liability was to be lessened in case another bond was given, it did so in face of the provision that its obligation "remains of like force and obligation as if such additional bond had not been given." The insertion of a clause having the effect of lessening its liability

nullifies the bond to this extent, and should be treated as surplusage.

The fact that under paragraph 208, *supra*, the sureties that have been compelled to pay any sum on account of the principal obligor are entitled to recover of the sureties on the remaining bond the portion the latter should have paid shows that the legislature intended that the county might sue on one or both bonds as it saw fit, and that contribution as between the sureties was a matter for them to settle. If the county could collect from the sureties on each bond only such portion of the total loss as the penalty of each bond bears thereto, there would have been no occasion for the enactment of section 208, the sole purpose of which is to enable a surety compelled to pay to recover of the sureties on the other bond the portion they should have paid in order that the loss might be borne by all the sureties in the proportion it bears to the penalty of their respective bonds.

The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.