[No. 24566.   Department Two.   January 4, 1934.]

CHRISTINA SAKRIS, *Respondent,* v. EAGLE INDEMNITY COMPANY, *Appellant,* THEODORE GENTSCH, *Defendant.*[1]

*H. Earl Davis* and *Lawrence H. Brown,* for appellant.

*Roy A. Redfield,* for respondent.

[1]Reported in 28 P. (2d) 316.

74

HOLCOMB, J.—According to the undisputed facts herein, for some time prior to March 13, 1931, respondent had been the owner of some residence property in Spokane, and Theodore Gentsch, a real estate broker of Spokane, had been her agent and broker for many years. The property being deteriorated, Gentsch persuaded respondent that he could rehabilitate it and rent it so that it would bring in an income.

In order to finance the necessary improvements, respondent, at Gentsch's suggestion, placed a mortgage on the property, which netted, after expenses had been deducted, $975, which, at the suggestion of respondent, was paid by the mortgagee to Gentsch so that the latter might use it for the desired purposes. She left this money in the hands of Gentsch with instructions to proceed, at her expense, to remodel, find tenants and collect the rents. When the proceeds of the mortgage were received by Gentsch, which was by check, on March 13, 1931, he did not immediately cash the check, but carried it on his person for four days, cashing it on March 17, 1931.

On that date, Gentsch, as principal, and appellant, as surety, made and executed a statutory real estate broker's bond in the principal sum of one thousand dollars, on which this action is based. This statutory bond was thereafter delivered to the state of Washington, director of licenses, for a broker's license to be issued by the director of licenses to Gentsch. By its terms, the bond was in effect from its date, March 17, 1931, to December 31 of that year and was conditioned as follows:

"Now, therefore, If the said Theodore Gentsch the above bounden principal, shall, if said license is or has been issued to him, render a faithful accounting of all funds intrusted to him as such real estate broker by any person as provided in said chapter 129, Extraordi-

nary Session Laws of 1925, and pay to any party entitled thereto all damages arising by reason of the failure of said principal to render to any person a faithful accounting of all funds so intrusted to him as such real estate broker, either directly or indirectly, then this bond shall be void and of no effect; otherwise to remain in full force and virtue."

During the period from March 17 to December 31, 1931, Gentsch improved the property, found tenants for the premises on a month to month basis without written leases, and from time to time collected from them rents amounting to $504.

Of the $975 mortgage money intrusted to him, Gentsch became entitled to sundry credits amounting to $487, thus leaving the net sum of $992, the property of respondent, which he appropriated and converted to his own use.

The controlling statutory provisions are now codified as Rem. Rev. Stat., §§ 8340-4, 8340-10, and 8340-11. It is first to be noted that the $504 rental money converted by Gentsch was all received during the period in which the bond for that year was in force. The $975 mortgage money, although in his hands as a check prior to that date, had not been cashed or reduced to money until March 17.

The terms of this bond were very similar to the terms of that involved in *Wenatchee Orchard Syndicate v. Fidelity & Deposit Company of Maryland,* 143 Wash. 632, 255 Pac. 943, which we held made it a purely prospective and not a retrospective bond. Hence, this bond must be held to be prospective, only.

As to the rental money, we held in *Salisbury v. Alskog,* 144 Wash. 88, 256 Pac. 1030, that the statute, being penal, was to be strictly construed; and, further, that, since a leasehold interest in real estate had, prior to the enactment of the statute, always been considered

as personal property and transferable as such, it could not be considered an interest in real estate. It would be presumed, therefore, that the legislature, in enacting the definition of a real estate broker, as provided in § 8340-4, *supra,* knew and understood that a leasehold interest in property was not real estate, and that the surety of a real estate broker was not liable under such statute for delinquencies of a broker in negotiating the transfer of a leasehold interest in real estate.

In *National Bank of Tacoma v. Globe Indemnity Co.,* 164 Wash. 222, 2 P. (2d) 706, it was held that an agent who merely collects rents is not a real estate broker within the contemplation of § 8340-4, *supra,* but reserved and refused to decide the question of whether, if during the period covered by the bonds in that action, the broker had negotiated a lease or leases upon part or parts of the property and failed to account for rent during that period, the surety would have been liable.

In the present case, the real estate broker procured tenants, on a month to month basis, for all the real estate, although no formal term leases were negotiated. He had entire charge of the real estate, and procured and collected the rentals monthly and failed to account therefor. These acts were certainly within the contemplation of the statute, and unless we unduly extend the force of the *Salisbury* and *National Bank of Tacoma* cases, the surety is liable.

Under the rule of strict construction, the liability of the surety must not. be extended to any other subject or to any other person than is expressly included in it. 21 R. C. L. 977. The same text, however, continues:

"What is demanded is merely that the sureties are not to be bound by implication, or beyond the extent to which they have obligated themselves in the execution of the bond. While the liabilities of sureties are

to be strictly construed, it is not the duty of courts to aid them to escape liability by technical and hypercritical construction. . . . and the obligation of a surety may not be reduced by construction any more than it may be extended." 21 R. C. L. 978.

Conceding that the rule of strict construction applies in this state, it is not to be so strictly construed as to deny all liability on the part of the surety for such misappropriations as here involved.

█ Respecting the mortgage money embezzled by Gentsch, appellant insists that it was embezzled when he received the check on March 13. We cannot assent to that contention. The check was not reduced to money until March 17. On that day, he embezzled the money, which belonged to his principal, and had been entrusted to him by her.

Section 8340-10, *supra,* prescribes that a real estate broker is required to give a bond to the effect that he will faithfully account for "all funds entrusted to such real estate broker."

Section 8340-11, *supra,* provides that any person who may be damaged by the wrongful conversion of

". . . trust funds by such real estate broker, shall, in addition to other legal remedies, have a right of action in his own name on such bond for all damages not exceeding one thousand dollars ($1,000)."

Immediately upon receiving the actual money obtained from the mortgage, Gentsch embezzled it. If the funds were converted during the term covered by this bond, the surety is liable for it. *Moore v. Madison County,* 38 Ala. 670. See, also, *Farrar v. United States,* 30 U. S. 373, 8 Law. Ed. 159; *United States v. Boyd,* 40 U. S. 187, 10 Law. Ed. 706.

It was a fund entrusted to the broker. *De Haven v. Tomer,* 170 Wash. 524, 17 P. (2d) 21.

We conclude that the judgment was right, and it is affirmed.

BEALS, C. J., BLAKE, GERAGHTY, and TOLMAN, JJ., concur.